PRODUCTION CREDIT ASSOCIATION OF MINOT, Plaintiff and Appellee,

v.

Gerald A. KLEIN and Bernadette Klein, Defendants,

and

Adam Axtman and Margaret Axtman, Defendants and Appellants.

Civ. No. 11085.

Supreme Court of North Dakota.

April 10, 1986.

Pringle & Herigstad, Minot, for plaintiff and appellee; argued by John J. Petrik.

Joseph A. Turman, Fargo, for defendants.

McGee, Hankla, Backes & Wheeler, Minot, for defendants and appellants; argued by Donald L. Peterson.

GIERKE, Justice.

Adam and Margaret Axtman appeal from a summary judgment setting aside a conveyance of land from Gerald and Bernadette Klein to them as a fraudulent transfer. We reverse.

On August 1, 1972, the Axtmans, Bernadette Klein's parents, conveyed approximately 780 acres of land in Pierce County to the Kleins by warranty deed for $78,000. As security for payment of the purchase price, the Axtmans received a mortgage deed from the Kleins which set forth a payment schedule according to the conditions of three referenced notes. By 1981 Kleins had paid approximately $25,000 to the Axtmans. However, the Kleins did not make any payments after 1981 and by 1983 they were delinquent on approximately $6,500 in principal. On August 11, 1982, the Kleins filed a chapter 11 reorganization petition in bankruptcy court; however, on January 9, 1984, that petition was set aside. On February 7, 1984, the Kleins reconveyed the 780 acres back to the Axtmans by warranty deed.

The Kleins owed the Production Credit Association of Minot (PCA) on several loan agreements entered into in 1980 and 1981. The land in question was not security for those loans. On July 13, 1982, PCA commenced an action to collect the debt relating to those loans, and on April 2, 1984, PCA received a $414,621.28 judgment against the Kleins in that action.

Thereafter, PCA commenced the instant action against the Kleins and Axtmans alleging that the February 7, 1984 conveyance was made without fair consideration and while the Kleins were insolvent and seeking to set aside the conveyance as a fraudulent transfer. PCA moved for summary judgment, asserting that there was no issue of material fact as to whether or not the transfer was fraudulent. While PCA's motion was pending, the Kleins filed a chapter 7 liquidation petition in bankruptcy court, and PCA's action against the Kleins was stayed under the automatic stay provisions of the bankruptcy code.[1]

---

1. 11 U.S.C. 362(a)(1) provides:
   "§ 362. Automatic stay
   "(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C.

   78eee(a)(3)), operates as a stay, applicable to all entities, of—
   "(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before

PCA and the Axtmans presented evidence on the motion for summary judgment concerning the value of the land and the consideration given for the conveyance. The district court determined that there was no genuine issue as to any material fact and granted summary judgment for PCA against the Axtmans alone, thereby setting aside the conveyance from the Kleins to the Axtmans.

■ On appeal, the Axtmans initially contend that PCA's action against them should have been stayed by the Kleins' bankruptcy petition. The Axtmans assert that the district court's decision, in effect, allowed a direct action against the Kleins.

It is well settled that the automatic stay provisions of the bankruptcy code extend only to the stay of an action against a debtor involved in a bankruptcy proceeding and not to co-defendants who are not involved in bankruptcy proceedings. *E.g., Fortier v. Dona Anna Plaza Partners,* 747 F.2d 1324 (10th Cir.1984). The Axtmans have cited no authority contrary to the overwhelming weight of authority, and we conclude that the instant action is not stayed as to them.

> the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> "(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
> "(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
> "(4) any act to create, perfect, or enforce any lien against property of the estate;
> "(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
> "(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
> "(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and
> "(8) the commencement or continuation of a. proceeding before the United States Tax Court concerning the debtor."

Before considering the parties' specific arguments concerning whether or not summary judgment was appropriate, we will briefly set out the pertinent standards for summary judgment. A motion for summary judgment will be granted only if, after viewing the evidence in the light most favorable to the party against whom summary judgment is sought, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Allegree v. Jankowski,* 355 N.W.2d 798 (N.D.1984); Rule 56, N.D.R. Civ.P. Summary judgment is a procedural device available for promptly and expeditiously disposing of a controversy without a trial when there is no dispute as to material facts and when only a question of law is involved. *Zuraff v. Empire Fire & Marine Insurance Co.,* 252 N.W.2d 302 (N.D. 1977). The party opposing a motion for summary judgment must receive the benefit of all favorable inferences which can be reasonably drawn from the evidence. *Everett Drilling Ventures, Inc. v. Knutson Flying Service, Inc.,* 338 N.W.2d 662 (N.D.1983).

Section 13–02–04, N.D.C.C., deals with fraudulent conveyances and provided [2]:

**2.** Ch. 13–02 was North Dakota's version of the Uniform Fraudulent Conveyance Act and was repealed by the 1985 Legislature. 1985 N.D. Sess.Laws, Ch. 186, § 12. Ch. 13–02.1, N.D.C.C., was adopted effective July 1, 1985, and is the Uniform Fraudulent Transfer Act. Because the transfer in question occurred before July 1, 1985, the rights of the parties are governed by Ch. 13–02, N.D.C.C. Section 13–02–04, N.D.C.C., is virtually identical to Section 4 of the Uniform Fraudulent Conveyance Act.

PCA's complaint also relied upon Section 13–02–07, N.D.C.C.; however, that statute clearly requires a factual determination of whether there was actual intent to hinder, delay, or defraud creditors, *Schmidt v. Schmidt,* 254 N.W.2d 102 (N.D.1977), thereby precluding summary judgment. The record before us does not include a memorandum opinion or statement from the bench by the district court to indicate its reasons for granting summary judgment. Because Section 13–02–07, N.D.C.C., requires actual intent, whereas the language of Section 13–02–04, N.D.C.C., states that it is "without regard to his actual intent," we assume, as PCA has, that the district court's decision was based on Section 13–02–04, N.D.C.C.

"13-02-04. *Conveyances by insolvent.* Every conveyance made and every obligation incurred by a person who is or thereby will be rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

PCA and the Axtmans agree that the Kleins were insolvent when the conveyance was made on February 7, 1984. The Axtmans contend that the district court erred in granting summary judgment because there was a genuine dispute as to the material facts and inferences deducible from those facts concerning whether or not the conveyance was made for less than fair consideration. PCA counters that the conveyance was fraudulent as a matter of law because it was made for less than fair consideration.

Section 13-02-03, N.D.C.C., defined fair consideration in language identical to Section 3 of the Uniform Fraudulent Conveyance Act and provided:

"13-02-03. *Fair consideration.* Fair consideration is given for property, or obligation:

"1. When in exchange for such property or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied; or

"2. When such property or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained."

▮ Fair consideration under that section requires not only a fair equivalent but also includes an element of good faith. *Huber v. Coast Investment Co., Inc.*, 30 Wash.App. 804, 638 P.2d 609 (1981); Cook, Fraudulent Transfer Liability Under the Bankruptcy Code, 17 Hous.L.Rev. 263, 279 (1980). A fair equivalent does not necessarily mean the exact equivalent and is not determined solely on a precise scale of the

value of property conveyed and the price received, but all the surrounding circumstances must be considered to determine whether there is a reasonable and fair proportion between one and the other. *John Ownbey Company, Inc. v. Commissioner of Internal Revenue*, 645 F.2d 540 (6th Cir.1981); *Zellerbach Paper Company v. Valley National Bank*, 13 Ariz.App. 431, 477 P.2d 550 (1970); *see* Cook, Fraudulent Transfer Liability Under the Bankruptcy Code, supra. No one factor is determinative of whether or not fair consideration has been given and among the circumstances to be considered are the bargaining positions of the parties, the adequacy of the purchase price, and the marketability of the transferred property. Cook, Fraudulent Transfer Liability Under the Bankruptcy Code, supra, at 278. These factors recognize that fair consideration may not necessarily be an appraised or market value and that the entire factual circumstances of the transaction must be evaluated.

▮ In the instant case, the Axtmans presented evidence that the February 7, 1984 transfer was either for the $49,603.31 recited on the deed or for the amount due under the mortgage, approximately $55,000. Gerald Klein also testified in his deposition that the $55,000 debt owed on the land did not include interest; however, he did not testify as to the exact amount of interest owed. PCA presented two appraisals of the land ranging from $148,500 to $151,010. Gerald Klein and Margaret Axtman also testified in depositions that the property was worth the same amount that the Kleins bought it for in 1972, approximately $78,000.

In the instant case, viewing the evidence most favorable to the Axtmans, the Kleins received consideration for the property of approximately $55,000 and the property was worth approximately $78,000. According to these figures, the consideration given was approximately 70% of the value of the property.[3]

---

3. During oral argument, PCA cited *Durrett v. Washington National Insurance Co.,* 621 F.2d

201 (5th Cir.1980) for the proposition that a transfer for less than 70% of market value of

Having reviewed the facts and possible inferences presented in this case, and taking into account that fair consideration requires an examination of the surrounding circumstances of the transaction, we believe that the evidence presented to the district court was sufficient to preclude summary judgment on the question of fair consideration.[4] Accordingly, the district court judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

ERICKSTAD, C.J., VANDE WALLE and LEVINE, JJ., and HATCH, District Judge, concur.

HATCH, District Judge, sitting in place of MESCHKE, J.; disqualified.

property was not, as a matter of law, for a fair equivalent. However, in the instant case, viewing the evidence in the light most favorable to the Axtmans, the conveyance was for 70% of the value. Furthermore, we decline to adopt a numerical benchmark for determining fair equivalent. Rather each case should be based on its own factual circumstances.

4. The Axtmans also relied on Gerald Klein's affidavit which provided, in part:

"I am familiar with the value of farm land in the vicinity of the land which is the subject matter of this cause of action and in my opinion based on the numerous sales I have attended, and the general knowledge of the values of land in the community, the value of this land at the time I transferred it to my mother-in-law and father-in-law did not exceed the value of the debt against it, plus that amount which I would be able to claim exempt under North Dakota Laws."

Because of our resolution of this case, we need not decide whether any inconsistency in values for the land in this affidavit and Gerald's earlier deposition also creates a question of fact.