The **FIRST STATE BANK OF CASSELTON**, Plaintiff and Appellee,

v.

**Janet R. McCONNELL and Edward D. Nesemeier as Trustee for Edward William McConnell and any other children that may be born to Janet Nesemeier McConnell, Defendants and Appellants.**

### Civ. No. 11399.

Supreme Court of North Dakota.

July 28, 1987.

---

Nilles, Hansen & Davies, Fargo, for plaintiff and appellee; argued by Roger A. Royse.

DeMars, Turman & Johnson, Fargo, for defendants and appellants; argued by Joseph A. Turman.

ERICKSTAD, Chief Justice.

Janet R. McConnell and Edward D. Nesemeier, as trustee for Edward William McConnell, appeal from a summary judgment granted in favor of the First State Bank of Casselton (Bank) setting aside as fraudulent a conveyance of real property from McConnell to Nesemeier. We reverse.

On March 9, 1983, McConnell defaulted on a $54,650 promissory note made to the Bank. On July 10, 1984, McConnell executed a quitclaim deed transferring her undivided one-half interest in certain Cass County real property to her father, Nesemeier, as trustee for her son, Edward, and any other children that may be born to her. It is undisputed that McConnell conveyed her interest in the property without receiving any consideration. On the same day that the conveyance was made, the Bank commenced an action against McConnell to recover on the promissory note and subsequently obtained a judgment in the total amount of $81,354.84.

The Bank did not attempt to execute on that judgment but commenced this action under the provisions of the Uniform Fraudulent Conveyance Act, Chapter 13–02, N.D.

C.C.,[1] to set aside the conveyance. The Bank alleged that the conveyance by McConnell was voidable under § 13–02–04, N.D.C.C., because it was not made for a fair consideration and it rendered her insolvent. The Bank subsequently moved for summary judgment. The district court granted the Bank's motion, concluding that there were no genuine issues of material fact and that the Bank was entitled to judgment as a matter of law. Judgment was entered declaring the conveyance "fraudulent and void and a nullity," and this appeal followed.

McConnell asserts that the district court erred in granting summary judgment because a genuine issue of material fact exists as to whether she was rendered insolvent by the conveyance. We agree.

Section 13–02–04, N.D.C.C., provides:

"*13–02–04. Conveyances by insolvent.* Every conveyance made and every obligation incurred by a person who is or thereby will be rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

Section 13–02–02(1), N.D.C.C., defines insolvency:

"*13–02–02. Insolvency.* The question of insolvency shall be determined as follows:

"1. A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."

Generally, whether a transferor was insolvent at the time of the transfer or was thereby rendered insolvent is a question for the trier of fact. *Telefest, Inc. v. VU–TV, Inc.*, 591 F.Supp. 1368, 1376 (D.N.J.1984).

Under Rule 56, N.D.R.Civ.P., a movant for summary judgment has the burden of

---

1. Chapter 13–02, N.D.C.C., North Dakota's version of the Uniform Fraudulent Conveyance Act, was repealed by the Legislature in 1985 and replaced with the Uniform Fraudulent Transfer Act, Chapter 13–02.1, N.D.C.C. *See* 1985 N.D. Sess.Laws, Ch. 186. Because the conveyance in question occurred before July 1, 1985, the rights of the parties are governed by the provisions of Chapter 13–02, N.D.C.C. *See Production Credit Ass'n of Minot v. Klein*, 385 N.W.2d 485, 487 n. 2 (N.D.1986).

showing that there is no dispute as to either the material facts or the inferences to be drawn from undisputed facts and that he is entitled to judgment as a matter of law on the facts shown. *Northwestern Equipment, Inc. v. Badinger,* 403 N.W.2d 8, 9 (N.D.1987). If the movant fails to meet this initial burden, summary judgment is inappropriate even if the adverse party fails to respond by filing proof in opposition to the motion. *Badinger, supra; Rice v. Chrysler Motors Corporation,* 198 N.W.2d 247, 252 (N.D.1972). In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion, and he must be given the benefit of all favorable inferences which can be reasonably drawn from the evidence. *Production Credit Ass'n of Minot v. Klein,* 385 N.W.2d 485, 487 (N.D.1986); *Everett Drilling Ventures, Inc. v. Knutson Flying Service, Inc.,* 338 N.W.2d 662, 664 (N.D. 1983).

In this case the Bank moved for summary judgment "upon all the pleadings, files, affidavits, and records on file in this action, ..." The evidence presented by the Bank essentially consisted of an affidavit of counsel and two depositions of McConnell.

The affidavit of the Bank's counsel was accompanied by a personal financial statement of McConnell "which she provided to the First State Bank of Casselton indicating that her only assets on December 9, 1982 was cash in the bank of ... ($300) and her interest in the subject real estate of ... ($300,000)." Counsel's affidavit further stated that "McConnell conveyed substantially all her property, thereby rendering her with insufficient assets to pay her obligations to the [Bank], by virtue of her Deed of July 10, 1984." McConnell responded by affidavit that the financial statement "was signed in blank and filled out with incorrect and fictitious amounts

while in custody of the bank by parties unknown to her." She further "den[ied] that I have conveyed 'substantially all her property' when I created a trust on July 10, 1984 for my child ... for my indebtedness which wasn't to mature until December, 1985."

In a brief in support of its summary judgment motion, the Bank referred to McConnell's deposition testimony taken on September 3, 1986, in connection with the instant case. The Bank relied upon a part of McConnell's deposition testimony indicating that her only assets consisted of her interest in her homestead, her interest in a 1976 Toronado automobile, and her one-half interest in the land conveyed. In its brief the Bank asserted that, taking into account statutory exemptions with regard to these assets, McConnell would have non-exempt assets of "$61,800 as of the date of transfer," which was less than the $67,149 "which was due and owing to the Bank as of that date ... and was much less than the $81,000.00 judgment which was subsequently had against her."

However, in the 1986 deposition, McConnell testified that she and her husband also owned a "quarter [section of land] down south just north of Davenport ..." [2] and that she had personal property consisting of furniture and cars. Moreover, the Bank also submitted McConnell's deposition testimony taken on February 14, 1985, in connection with the Bank's previous suit on the promissory note. During the 1985 deposition, McConnell further testified:

"Q. [By Mr. Garaas] You also mentioned a house in Casselton that you were acquiring from your father. Do you also have personal property that you haven't told Mr. Nilles about?

"A. Yes.

2. The Bank asserts that this property is in fact owned by McConnell's husband and urges us to take judicial notice of "the real estate records of the Cass County Register of Deeds office showing conclusively that McConnell did not have an interest in the land." It does not appear, however, that the trial court was requested to take judicial notice of this fact. Even if we were to take judicial notice that McConnell had no interest in this property, McConnell's deposition testimony nevertheless demonstrates that there is a material factual dispute as to the extent of McConnell's assets at the time of the conveyance and whether she was thereby rendered insolvent.

"Q. And there's an extensive amount of personal property; is that right?

"A. Yes. Just with this apartment above our garage that means two washers, two dryers, two refrigerators, two stoves, two—you know, it's double of everything.

\* \* \* \* \* \*

"Q. [By Mr. Nilles] Well, let me put it this way. You don't have assets of $57,-000 left after you conveyed away your farm interest; do you?

"A. I—it could be very close to that amount as far as adding up personal property and things. Our house, you know, is I'm sure—it hasn't been—what has been the last estimate on the value of our house and the property?

"Q. Well, other than your house—other than your house you wouldn't have—

"A. You mean, personal?

"Q. Yeah, personal property.

"A. I would say I have close to that amount, yes.

"Q. Consisting of what?

"A. Savings, insurance policies and—and our—our car, our—we have, like I said, a double—a duplicate amount of all our appliances and things like that."

Giving McConnell the benefit of all favorable inferences which can be reasonably drawn from the evidence, we conclude that the evidence presented by the Bank does not establish that there are no genuine issues of material fact with regard to whether McConnell was insolvent at the time of the conveyance or was thereby rendered insolvent.[3] The evidence presented by the Bank reflects not only that McConnell had additional assets not considered or addressed by the Bank's motion, but also that there is uncertainty over the amount McConnell was indebted to the Bank at the time of the conveyance.

The Bank appears to assert that summary judgment was appropriate because the

notice of deposition and subpoena served therewith required McConnell to produce all deeds, titles, certificates or bills of sale, or other evidences of ownership of all property which she may have had in July 1984, as well as a listing of her assets and liabilities. This information was also requested through the Bank's interrogatories. Apparently, McConnell has not complied. However, the "deposition and discovery rules provide effective means whereby any party to an action may obtain from any person, including an adverse party, non-privileged factual data concerning all the issues of the case—not merely data in support of the party's claim or defense, but also factual information concerning his adversary's claim or defense." 6 J. Moore, Moore's Federal Practice ¶ 56.15[5], at p. 56–557 (1987). The record does not reflect that the Bank has filed a motion to compel discovery under Rule 37, N.D.R.Civ.P. The remedy for a party's failure to comply with discovery requests is found in Rule 37, N.D.R.Civ.P., rather than in Rule 56, N.D.R.Civ.P. *See generally Jaffe v. Fogelson*, 137 Ill.App.3d 961, 92 Ill.Dec. 720, 485 N.E.2d 531, 533 (1985); *Poe v. Rice*, 706 S.W.2d 5, 6 (Ky.Ct.App.1986); *Broadwater v. Arch*, 267 Md. 329, 297 A.2d 671, 674–675 (1972).

We conclude that summary judgment was inappropriately granted in this case. Accordingly, the summary judgment is reversed.

GIERKE, VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

---

**3.** Because we conclude that the Bank failed to meet its initial burden of showing that there is no dispute as to material facts and that it is entitled to judgment as a matter of law, we need not address the Bank's argument that the defendants failed to adequately respond to the summary judgment motion. *See First National Bank of Hettinger v. Clark*, 332 N.W.2d 264 (N.D.1983).