**In re Marvin L. WARNER, Debtor.**

**Bankruptcy No. 87–1682–BK–J–11.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Feb. 26, 1988.

James A. Fischette, Jacksonville, Fla., for debtor.

Stephen D. Busey, Jacksonville, Fla., for Unsecured Creditors' Committee.

## MEMORANDUM OPINION

GEORGE L. PROCTOR, Bankruptcy Judge.

The Court has for consideration Debtor's motion to dismiss his Chapter 11 case. A hearing on the motion was held February 7, 1988, at the conclusion of which the Court announced its intention to take the matter under advisement to permit the filing of briefs by interested parties. Based upon the evidence presented, the argument of counsel, and such briefs, the Court finds that dismissal would not be in the best interest of creditors. 11 U.S.C. § 1112(b).

### I. The Facts

This case was commenced by the filing of a voluntary petition under Title 11, Chapter 11 (the "Code") on October 22, 1987. On October 30, 1987, the Court entered an order authorizing the debtor to continue in the management and operation of his financial affairs and properties as debtor-in-possession pursuant to §§ 1107 and 1108 of the Code.

Prior to filing his petition, the Debtor was engaged in the real estate and banking business and had accumulated substantial interests in marketable securities, thoroughbred horses and other valuable assets. The Debtor's audited personal financial statements prepared on April 4, 1984, showed the Debtor having total assets of more than $183 million and a net worth of more than $79 million.

In the Spring of 1985, the Debtor became the subject of numerous legal actions resulting from the collapse of ESM Government Securities, Inc. ("ESM"), a brokerage firm dealing in government securities. On March 2, 1987, the Debtor was convicted by a jury in an Ohio State Court of crimes involving the unauthorized transfer of funds and other security violations. The verdict is presently on appeal.

By the time Debtor filed his petition on October 22, 1987, the Debtor was a party to over 30 other civil and criminal proceedings which, according to Debtor's schedules, seek to recover approximately $4.4 billion of claims.

On November 16, 1987, the Debtor filed schedules showing less than $3 million in non-exempt assets (exclusive of contingent litigation claims) and approximately $17 million in exempt assets. As disclosed by the Debtor in his schedules and during his

Section 341 examination, the decrease in the Debtor's net assets from $79 million in 1984 to $17 million in exempt and $3 million in non-exempt assets in 1987 can be explained, at least in part, by the transfer of property to other parties, including a transfer of some $8 million of assets from the Debtor and his wife, as tenants by the entireties, to his wife singularly less than a year before the petition date.

On October 27, 1987, Thomas Tew, as Trustee of the Chapter 7 estate of ESM Government Securities, Inc., filed a motion for relief from the automatic stay imposed by 11 U.S.C. § 362 seeking authority to proceed with a lawsuit against the Debtor in the Southern District of Florida. The Debtor rigorously opposed that motion and asserted his right to have all of the lawsuits against him consolidated in this single forum. Following a continuation of the original hearing, the motion was eventually heard on November 27, 1987. At that time, the Court concluded that its calendar was too congested to permit a trial of that lawsuit in this Court any time in the near future. Consequently, the Court lifted the stay to permit Mr. Tew to continue his lawsuit and to liquidate his claim against the Debtor.

Soon after that order had been entered, the Debtor filed his motion for dismissal of the instant case arguing that the lifting of the automatic stay with respect to Thomas Tew had "made it impossible for the Debtor to consolidate the pending litigation in this forum and to employ the 'home court rule.'" In support of that motion, the Debtor argued:

> One of the primary purposes of the filing of the Petition herein was to provide the debtor with an opportunity ... to consolidate the diverse and chaotic litigation which was pending against him, and this is not now feasible.

The unsecured creditors' committee (the "Committee") and the United States Trustee filed responses in opposition to the Debtor's Motion to Dismiss contending that the creditors in this case would be prejudiced if the case was dismissed. A hearing on the motion was scheduled for January 25, 1988, and, upon the Debtor's request, was continued until Sunday, February 7, 1988. At that hearing, the Court took testimony from a number of witnesses. The Court heard arguments by the Debtor and his creditors. The creditors were unanimous in their opposition to dismissal of this case. The United States Trustee also opposed the dismissal.

## II. Discussion

To obtain a voluntary dismissal of a Chapter 11 case, a debtor must demonstrate that, for "cause," a dismissal is "in the best interest of creditors and the estate." 11 U.S.C. § 1112(b). Such cause will not exist if dismissal will result in possible prejudice to the creditors. *In re Hall*, 15 B.R. 913 (Bkrptcy.App. 9th Cir. 1981); *In re Mathis Insurance Agency, Inc.*, 50 B.R. 482 (Bkrptcy.E.D.Ark.1985); *In re Kimball*, 19 B.R. 300 (Bkrptcy.D.Me. 1982); *In re Williams*, 15 B.R. 655 (E.D. Mo.1981).

> The most important consideration when dismissing a case is whether dismissal is in the best interest of creditors. *In re Banks*, 35 B.R. 59 (Bkrptcy.D.Md.1983). Generally, if dismissal of the debtor's case results in prejudice to the creditors, it is not proper for the case to be dismissed unless all creditors affirmatively consent to the dismissal.

*In re Mathis Ins. Agency*, 50 B.R. at 486.

The Debtor, in support of his motion to dismiss, has argued that no such prejudice exists due to the protection afforded creditors under Florida law. At the hearing, it became apparent that this issue had to be narrowed to the question of whether the creditors would receive the same protections provided under §§ 547 and 548 of the Code as they would under Florida's newly enacted Uniform Fraudulent Transfer Act ("UFTA"). Section 726.101 et seq., Florida Statutes (1987). This question is in turn dependent upon the resolution of whether the UFTA has retroactive application.

Under Florida law, it is generally understood, that in the absence of a clear legislative intent to the contrary, a law is pre-

sumed to act prospectively only. Thus, it may be inferred that a new statute will be given retroactive effect only when by its terms it clearly shows that such effect was intended.[1] *Walker & LaBerge, Inc. v. Halligan,* 344 So.2d 239, 241 (Fla.1977); *American Motors Corp. v. Abrahantes,* 474 So. 2d 271, 274 (Fla. 3d DCA 1985).

> It has long been the law in Florida that statutes are to be applied prospectively unless their terms clearly and unequivocally show that the intent of the Legislature is that they be applied retroactively.

*Lewis v. Creative Developers, Inc.,* 350 So.2d 828, 829 (Fla. 1st DCA 1977).

Here, the legislature has not indicated whether the UFTA should be given retroactive effect. Instead, it merely states that the effective date of the statute is January 1, 1988. Due to this lack of direction, the Court is unwilling to assume that the provisions of the UFTA are applicable to transfers which occurred prior to the effective date of the act. *See e.g., Production Credit Association of Minot v. Klein,* 385 N.W. 2d 485, 487 n. 2 (N.D.1986) (the UFTA was held inapplicable to transfers occurring prior to the effective date of the act); *First State Bank of Casselton v. McConnell,* 410 N.W.2d 139, 140 n. 1 (N.D.1987).

This issue is important because it may dramatically affect rights of the various creditors. For instance, under the "old" fraudulent conveyance statute, Section 726.01, Florida Statutes, it is unclear whether the debtors would be able to bring an action to avoid transfers made without "reasonable equivalent value" without having to prove debtor's actual intent. Similarly, that statute might also prohibit the

creditors from avoiding transfers to insiders on account of antecedent debts. Because these rights are afforded under §§ 547 and 548 of the Bankruptcy Code, the Court cannot presume that the creditors would be better protected under state law.[2]

Furthermore, a cursory review of the case law regarding evidentiary presumptions under the Florida fraudulent transfer statutes and those arising under the Code reveals that the creditors evidentiary burden may be greater in the state courts as opposed to the bankruptcy forum. For instance, the provisions of the UFTA do not provide for any evidentiary presumption in determining the debtor's fraudulent intent. Section 726.105(2), Florida Statutes.[3] In contrast, some bankruptcy courts have held that a presumption of fraudulent intent does arise in some instances under § 528 of the Code.

> Where a transfer is between related parties, the transfer is subject to close scrutiny and gives rise to a presumption of actual fraudulent intent where the transfer is without adequate consideration.... this presumption establishes trustee's prima facia case and shifts the burden of proof to establish the absence of fraudulent intent to the debtor.

*In re Porter,* 37 B.R. 56 (Bkrptcy.E.D.Mo. 1984); *See also, In re Stevenson,* 69 B.R. 49 (Bkrptcy.E.D.Mo.1986). Although this Court has not determined the issue of whether the creditors are entitled to a presumption of fraudulent intent under the Code, this question is certain to arise if this case is dismissed.[4]

---

**1.** While the general rule prohibits the retrospective operation of legislation, remedial statutes or those statutes relating only to remedies or procedures which do not create new rights or take away vested rights do not fall within this prohibition. 49 Fla.Jur.2d Section 108. However, this exception to the general rule has no application in this case because the UFTA clearly creates rights that did not exist under the prior law.

**2.** The Court is unpersuaded by Debtor's argument that Florida Statutes § 56.29 provides creditors the same protection as that afforded under the Bankruptcy Code.

**3.** The Comments to UFTA Section 105(2) provide:

> Proof of the existence of any one or more of the factors enumerated ... may be relevant evidence as to the debtor's actual intent but does not create a presumption that the debtor has made a fraudulent transfer or incurred a fraudulent obligation.

**4.** The Debtor also argued that a presumption of fraudulent intent exists under the UFTA by virtue of Section 56.29, Florida Statutes 1987). However, the presumption of fraudulent intent established by Section 56.29 is expressly applicable only to proceeding supplementary to the

The creditors next argue that their right to share in an orderly distribution of the estate and prevent the "race to the courthouse," precludes the Court from granting the Debtor's motion. Indeed, some courts have gone this far and have held that if a dismissal would result in the loss of the right of creditors to a pro-rata distribution of the assets, the creditors would be prejudiced and dismissal should therefore be denied. *See, e.g., In re Blue,* 4 B.R. 580, 585–586 (Bkrptcy.Md.1980).

In this case, one creditor has already obtained a $22 million judgment against the Debtor and, if the case were dismissed, that creditor alone could possibly end up with all the Debtor's known available assets. Under these circumstances, the Court clearly finds that the creditors may be unduly prejudiced by dismissal.

The right to a pro-rata distribution is a major issue in this case and, upon the representations made at the hearing, is one the creditors are unwilling to forego. More specifically, the Court heard assurances from numerous creditors, including those most likely to levy on their judgment first, that they were willing to give up their right to a speedy distribution in exchange for the right to at least participate in an orderly allocation of the debtor's assets under the distribution scheme contemplated by Debtor's forthcoming plan. The Court finds this near unanimous position taken by the creditors to be most influential in its decision.

In further opposition to the Debtor's motion, the creditors have argued that if the motion to dismiss were granted, they would lose certain procedural benefits afforded them by Chapter 11. For example, under both the former and present Florida fraudulent transfer statutes, a cause of action with respect to a fraudulent transfer must be brought within four years after the transfer occurs. Sections 95.11(3) and 726.-110, Fla.Stat. (1987). In contrast, under § 544 of the Code, a trustee or debtor in possession can challenge transfers under Florida law that occurred within four years of the petition date. It follows then that a dismissal might possibly prevent the creditors from challenging any transfers which may have occurred between October 23, 1983 and March 1, 1984.

The Creditors' Committee has also argued that it may lose the benefit of discovery opportunities authorized by § 1103 of the Code and by Bankruptcy Rule 2004. Although the Court affords this argument little weight, it does appear that the Florida statutes have no comparable provisions. *See e.g., Matter of Max A. Mogul,* 17 B.R. 680, 682 (Bkrptcy.M.D.Fla.1982).

The Debtor has argued that the primary purpose behind the filing of his Chapter 11 case was to consolidate the litigation against him in one forum. He now argues that since the Court has lifted the automatic stay to allow certain creditors to proceed with their litigation, his goal has been frustrated and that therefore, the case ought to be dismissed.

While the Court is sympathetic to his desire to consolidate the litigation against him in one forum, the Debtor's questionable assumption that he could consolidate all of his pending litigation in the Middle District of Florida is far-fetched. Most Bankruptcy Courts, and especially this one, have neither the time or the resources to conduct what is tantamount to multi-district litigation and which may involve the right to a jury trial. Moreover, this Court is of the opinion that its resources ought to be devoted primarily to the matters contemplated by Congress as set forth in the Bankruptcy Code and not to the adjudication of non-core litigation already proceeding in other forums. Instead, the Court is content to permit an orderly resolution of the claims against Mr. Warner and to allow those claimants to bring their judgments into this Court to be dealt with under the Chapter 11 plan.

Lastly, the Court is concerned with the possible adverse impact "routine dismissals" would have on public confidence in

execution of judgments and would have no express application to an action commenced under the UFTA. Moreover, this argument is directly contrary to accompanying § 105(2) of the UFTA which expressly provides that no presumption is created by statute.

the bankruptcy system. To allow routine dismissals would send out the very undesirable message to the public that bankruptcy is a matter to be taken lightly, whereas the contrary is certainly true. *In re Martin,* 30 B.R. 24, 26 (Bkrptcy.E.D.N.C.1983). This Court is particularly influenced by the instructions given in *In re Mathis Insurance Agency, Inc.,* 50 B.R. 482, 487 (Bkrptcy.E.D.Ark.1985), wherein the Court stated:

Confidence of the public in the bankruptcy system must be upheld to the highest degree. Having submitted themselves to the jurisdiction of the court and availed themselves of the protection of the court, debtors whose fraudulent acts are discovered may not freely dismiss their case once the fraud is discovered. [Citations omitted]. To hold otherwise would be to invite mass dismissal and refiling of petitions at the mere whim of the debtors with the inherent prejudice to creditors.

In this case, Debtor and his attorneys knew, or should have known, that there is more to a Chapter 11 case than the protection of the automatic stay. Specifically, there is to be expected an examination by creditors who have an interest in the bankruptcy estate. Having thus submitted himself to this Court's jurisdiction, the Debtor cannot now be heard to complain that the creditors' enthusiastic examination of his financial affairs is ground for dismissal.

Based upon the factual scenario here presented, the Court is inclined to hold that a debtor may not file a Chapter 11 case, receive the benefits of the automatic stay, cause the creditors and the Court to expend their time and resources on the case, and then have it dismissed merely because some creditors have secured relief from the automatic stay or because the debtor has become uncomfortable under the scrutiny of his creditors.

Accordingly, Debtor's Motion to Dismiss the instant Chapter 11 case will be denied. The Court will enter a separate order in accordance with this opinion.