In re William KARRAS and
Lisa Karras, Plaintiffs,

v.

Dion KARRAS; Donald G. Karras, a/k/a Donald Karras; Norst Forsberg and Lila M. Forsberg; United States of America Acting Through the Internal Revenue Service; State of South Dakota ex rel. Department of Revenue; Christos Karras, a/k/a Chris Karras and Chris D. Karras; and A.G. Edwards and Sons, Inc., Defendants.

UNITED STATES of America,
Counterclaim and Cross-
claim Plaintiff,

v.

William KARRAS and Lisa Karras,
Counterclaim Defendants,

and

Dion Karras; Donald G. Karras, a/k/a Donald Karras; Norst Forsberg and Lila M. Forsberg; State of South Dakota ex rel. Department of Revenue; Christos Karras, a/k/a Chris Karras and Chris D. Karras; and A.G. Edwards and Sons, Inc., Cross-claim Defendants.

Lila M. FORSBERG and Lila M. Forsberg, Executrix of the Estate of Norst G. Forsberg, deceased, Second Counterclaim and Cross-claim Plaintiff,

v.

William KARRAS and Lisa Karras,
Second Counterclaim
Defendants,

and

Dion Karras; Donald G. Karras, a/k/a Donald Karras; United States of America Acting Through the Internal Revenue Service; State of South Dakota ex rel., Department of Revenue; Christos Karras, a/k/a Chris Karras and Chris D. Karras; A.G. Edwards and Sons, Inc.; George D. Karras, a/k/a George Karras; Gust T. Poulos, a/k/a Gus Poulos and Florence Heine, Second Cross-claim Defendants.

Civ. No. 92–4018.

United States District Court,
D. South Dakota, S.D.

Feb. 8, 1993.

See 16 F.3d 245.

Kevin L. Reiner, Yankton, SD, for plaintiffs William and Lisa Karras.

Dion Karras and Christos Karras, pro se.

Kenneth C. Hanson, Sioux Falls, SD, for defendants Norst Forsberg and Lila M. Forsberg.

John A. Marrella, U.S. Dept. of Justice, Sp. Litigation/Tax Div., Washington, DC, for defendant I.R.S.

*MEMORANDUM OPINION and ORDER*

JOHN B. JONES, Chief Judge.

This action was originally brought in state court by Plaintiffs, William Karras and Lisa Karras, as a foreclosure action. William and Lisa seek to quiet title to certain real property allegedly mortgaged to them by their mother, Dion Karras. The action was removed to federal court by defendant United States pursuant to 28 U.S.C. § 1444.[1] Coun-

---

1. Although plaintiffs' complaint does not state the authority for naming the United States as a defendant in a foreclosure action, that authority is found in 28 U.S.C. § 2410. Removal of such actions to federal district court is provided for in 28 U.S.C. § 1444.

terclaims and cross-claims were filed by defendant United States and by defendant Lila M. Forsberg and Lila M. Forsberg, Executrix of the Estate of Norst G. Forsberg, deceased ("Lila M. Forsberg"). Motions for summary judgment have been filed by plaintiffs and counterclaim defendants William and Lisa Karras; by defendant and first counterclaim and cross-claim plaintiff United States of America; and by defendant and second counterclaim and cross-claim plaintiff Lila M. Forsberg.

## BACKGROUND

On June 30, 1978, a warranty deed was issued to Chris Karras (a/k/a Christos Karras) from Lila M. and Norst Forsberg. The real property is described in the deed as:

> The Northwest Quarter of the Southeast Quarter (NW¼SE¼) and the North Half of the Southwest Quarter (N½SW¼), except County Auditor's Lot H–2 of the SW¼, all in Section 36, Township 101 North, Range 49 West of the Fifth Principal Meridian, Minnehaha County, South Dakota, subject to easements of record and rights of persons in possession.

The following day, July 1, 1978, Chris and Dion Karras, husband and wife, executed a mortgage on this property ("Forsberg land") to Lila and Norst Forsberg. Both Chris and Dion have remained as mortgagors of this property.

On September 1, 1978, a warranty deed was issued to Chris and Dion Karras from David D. Keleher and Deborah M. Keleher. That real property is described on the deed as follows:

> Lot 14 in Block 7 of Ponderosa Place, an Addition to the City of Sioux Falls, Minnehaha County, South Dakota, according to the recorded plat thereof. Subject to Restrictions and Easement of record.

The warranty deed states that Chris and Dion assumed the mortgage on this property, known as 4300 South Marion Road. That property is the Karras family home.

On August 27, 1984, the United States Internal Revenue Service ("IRS") mailed an appointment letter to Chris and Dion Karras requesting them to appear for an examination of their Form 1040 for tax year 1982. On June 12, 1985, the IRS served a summons upon Chris Karras directing him and Dion to appear for, and bring certain records to, an examination on June 24, 1985. Chris and Dion failed to appear for that examination.

On June 26, 1985, Chris Karras provided a financial statement to the First National Bank in Sioux Falls stating that he had assets of $1,710,750. His real estate holdings accounted for $1,391,500 of that amount, with mortgage liabilities totalling $317,500. His non-real estate assets totalled $319,250, and his non-real estate liabilities amounted to $42,700.

On July 5, 1985, Chris Karras purportedly transferred the Forsberg land and 4300 South Marion Road to Dion Karras. On March 23, 1987, Dion Karras purportedly transferred those two properties to Donald, William, and Lisa Karras. On April 10, 1987, Dion Karras purportedly transferred those two properties again, this time to Donald Karras only, even though she had allegedly transferred those properties to Donald, William, and Lisa two and one-half weeks earlier. However, based on the undisputed facts, Chris Karras has retained control, made mortgage payments, retained physical possession, represented himself as the owner of, and generally treated both the Forsberg land and the 4300 South Marion Road property as his own at all times pertinent to this action.

On September 9, 1988, and August 3, 1989, the IRS made assessments against Dion Karras totalling $1,192,407.17. On October 24, 1989, the IRS made an assessment against Chris Karras in the amount of $1,345,180.12.

On May 15, 1990, the IRS filed a Notice of Federal Tax Lien against the assets of Chris Karras, in the amount of $1,345,180.12, for unpaid 1040 taxes. On May 21, 1990, the IRS filed a Notice of Federal Tax Lien against the assets of Dion Karras, as a transferee of Chris Karras, in the amount of $1,345,180.12, for unpaid 1040 taxes.[2] On

---

**2.** It does not appear from the record that the IRS ever filed a Notice of Federal Tax Lien against Dion Karras for the amount of the individual assessments against her. The only Notice of

May 21, 1990, the IRS filed a Notice of Federal Tax Lien against the assets of Donald Karras, as a transferee of Chris Karras, in the amount of $1,345,180.12, for unpaid 1040 taxes. On May 21, 1990, the IRS filed a Notice of Federal Tax Lien against the assets of Donald Karras, as a transferee of Dion Karras, in the amount of $1,192,407.17, for unpaid 1040 taxes.

*Motions for Summary Judgment*

The Court granted the Forsberg motion for summary judgment at the motions hearing held on December 21, 1992. As a result, the Forsberg mortgage is superior to all other liens or claims on the Forsberg land.

The motions for summary judgment filed by the United States and by William and Lisa Karras are basically opposing sides of the same arguments. Both parties wish to have their interests in the properties at issue be declared superior to the opposing party. The Court will decide those two motions simultaneously.

The United States seeks to have the Court: (1) dismiss plaintiffs' complaint; (2) declare that the tax liens filed on the properties at issue are valid; (3) set aside the conveyances between the Karras family members on the basis that they constitute fraudulent conveyances; and (4) order that the federal tax liens be foreclosed, the properties be sold, and the proceeds be distributed in accordance with the law.

Plaintiffs seek to have the Court order that the federal tax liens are subordinate and secondary to the interests of plaintiffs William and Lisa Karras, as well as defendant Donald Karras.[3]

The United States argues that, in essence, this is an action orchestrated by Chris Karras attempting to put assets beyond the reach of the IRS. The Court agrees and for

the following reasons grants the United States' Motion for Summary Judgment and denies Plaintiffs' Motion for Summary Judgment.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The test for a genuine issue of material fact is "if a reasonable jury could return a verdict in favor of either party." *White v. Farrier,* 849 F.2d 322, 325 (8th Cir.1988) (citation omitted). A defendant moving for summary judgment has the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). However, the plaintiff is not relieved of his "burden of producing in turn evidence that would support a jury verdict." *Id.* The granting of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

On August 26, 1992, the United States served plaintiffs William and Lisa Karras, and cross-claim defendants Dion, Chris, and Donald Karras with the United States' First Request for Admissions, First Set of Interrogatories and Third Request for Production of Documents. There has been no response to any of these discovery requests.[4]

Federal Tax Lien which appears to have been filed against Dion is as a transferee of Chris Karras.

**3.** To the extent that Karras family members are opposing parties, the Court views that suit as a friendly lawsuit between those individuals to shield the properties at issue from being foreclos-

ed upon. The fact that plaintiffs assert the rights of defendant Donald Karras in their Motion for Summary Judgment supports this conclusion.

**4.** In addition, plaintiffs failed to submit any responsive brief to the United States' Motion for Summary Judgment. On December 14, 1992, plaintiffs filed their own Motion for Summary Judgment even though the Court's Rule 16

Under Rule 36 of the Federal Rules of Civil Procedure, matters contained in a Request for Admission are deemed admitted unless "the party to whom the request is directed serves upon the party requesting the admission[s] a written answer or objection addressed to the matter," within 30 days after service of the request. Fed.R.Civ.P. 36(a). There has not been any excuse presented by the plaintiffs or cross-claim defendants for not responding to the Request for Admissions. For that reason the Court deems the matters contained in the United States' First Request for Admissions to be deemed admitted.[5] The Request for Admissions essentially requests the plaintiffs and cross-claim defendants to admit to various facts which would show that the alleged conveyances were fraudulent under South Dakota law, as discussed below.

Not only have the plaintiffs or cross-claim defendants not responded to the United States Third Request for Production of Documents, they have not presented any documentary evidence for the record to establish that the conveyances were not fraudulent. Although the depositions of the Karrases contain repeated references to "records" and promises by the Karrases to produce those "records", which purportedly show that fair and valuable consideration was given for the conveyances, none of those alleged records have been submitted to the Court.

*Applicable Law*

The United States' motion for summary judgment is predicated on the provisions of the Uniform Fraudulent Transfer Act ("UFTA"), SDCL §§ 54–8A–1 through 54–8A–12. The Karrases have not contended that this is not the applicable law. However, the Uniform Fraudulent Transfer Act was not enacted until 1987, and became effective on July 1 of that year. 1987 S.D. Session Laws ch. 365; and SDCL § 2–14–16 (effective date of legislative acts). All of the allegedly fraudulent transfers occurred prior to July 1, 1987, and therefore are governed by the law in effect at that time. *See Schall v. Anderson's Implement, Inc.,* 240 Neb. 658, 484 N.W.2d 86, 89–90 (1992) (transactions occurred prior to enactment of UFTA, therefore governed by prior law—the Uniform Fraudulent Conveyance Act); *Holthaus v. Parsons,* 238 Neb. 223, 469 N.W.2d 536, 538 (1991) (same); *First State Bank v. McConnell,* 410 N.W.2d 139, 140 n. 1 (N.D.1987) (same); *Production Credit Assoc. v. Klein,* 385 N.W.2d 485, 488 n. 2 (N.D.1986) (same).

The law in effect at the time the transactions at issue occurred was codified at SDCL §§ 54–8–5 through 54–8–19 and was known as the Uniform Fraudulent Conveyance Act.[6] Therefore, the Court finds that this action is governed by the provisions of the Uniform Fraudulent Conveyance Act.

*Uniform Fraudulent Conveyance Act*

The particular statute involved here is former SDCL § 54–8–10 which provides:

Conveyance by insolvent.

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudu-

---

Scheduling Order had set October 30, 1992 as the deadline for the filing of motions. Plaintiffs have not presented any justifiable excuse for their dilatory behavior.

5. Pursuant to Local Rules, a party moving for summary judgment is required to submit a statement of material facts as to which there is no dispute. D.S.D. LR 56.1(B). A party opposing the motion is required to submit a statement of material facts which they contend are in dispute and they are also required to respond to the moving party's statement. D.S.D. LR 56.1(C). If the opposing party fails to controvert the mov-

ing party's statement of undisputed material facts, those facts are deemed to be admitted. D.S.D. LR 56.1(D).

Plaintiffs have not responded to the United States' statement of undisputed material facts, nor did plaintiffs submit their own statement of undisputed material facts with their Motion for Summary Judgment. Therefore, the statement of undisputed material facts submitted by the United States is deemed admitted.

6. SDCL §§ 54–8–5 through 54–8–19 were repealed upon the enactment of the Uniform Fraudulent Transfer Act, SDCL §§ 54–8A–1 through 54–8A–12.

lent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

Under the law in effect when the transactions took place, the determination of insolvency is governed by former SDCL § 54–8–6. That statute provided that:

A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured.

Following the July 5, 1985 transfer of all his real property to his wife on July 5, 1985, Chris Karras had assets of $319,250, and non-real estate liabilities of $42,700. Chris Karras' federal income tax liability for the years 1979, 1982, 1983, and 1984 totalled $1,345,180.12.[7] Therefore, Chris Karras was insolvent within the meaning of the statute both before and after the transfer.

Moreover, the Karrases have admitted that Chris Karras was insolvent after transferring the five parcels of real property to his wife. United States' First Request for Admissions ¶ 7 and United States' Statement of Undisputed Material Facts ¶ 14.

When a conveyance from husband to wife results in insolvency, a fair consideration is required to support the conveyance. Buhl v. McDowell, 51 S.D. 603, 216 N.W. 346, 347 (1927). The wife has the burden of proving that the transaction was bona fide and there is "a presumption against her which she must overcome by affirmative proof." Id. (quoting Churchill & Alden Co. v. Ramsey, 45 S.D. 454, 188 N.W. 742 (1922)); see also First National Bank of Beresford v. Anderson, 291 N.W.2d 444 (S.D.1980). As

detailed above, the Karrases have not come forward with any credible evidence to show that the conveyances were not fraudulent.

Since the transfer from Chris Karras to Dion Karras was fraudulent, Dion had no rights in the real property at issue which she could convey to her children.

Based on the reasons stated herein, the Court finds as a matter of law[8] that the purported conveyances at issue are fraudulent within the meaning of the Uniform Fraudulent Conveyance Act, former SDCL §§ 54–8–5 through 54–8–19, and are thereby set aside.

*Tax Liens*

None of the parties to this proceeding have contested the validity of the tax liens filed by the IRS. Therefore, the Court holds that the tax liens filed on the properties at issue are valid.

*Remaining Defendants*

The remaining defendants, State of South Dakota *ex rel.* Department of Revenue, A.G. Edwards and Sons, Inc., George Karras, Gus Poulos, and Florence Heine appear to have only a peripheral involvement in this action. The only apparent reason for these parties having been named as defendants appears to be that each of them has a potential claim against the properties at issue. None of these defendants appeared at the motions hearing held on December 21, 1992, and only A.G. Edwards and Sons, Inc., has filed an answer in this action. Furthermore, none of these defendants have disputed the superiority of the Forsberg mortgage, nor the validity of the federal tax liens.

The Court has determined that the Forsberg mortgage is superior to all other liens

---

**7.** Even though the taxes were not assessed against Chris Karras until 1989, federal taxes are due and owing and constitute a liability as of the date the return for the year in question is required to be filed. *United States v. Adams Building Co., Inc.*, 531 F.2d 342, 343 n. 2 (6th Cir. 1976); *Hartman v. Lauchli*, 238 F.2d 881, 887–88 (8th Cir.1956), *cert. denied*, 353 U.S. 965, 77 S.Ct. 1048, 1 L.Ed.2d 915 (1957); *United States v. Ressler*, 433 F.Supp. 459, 463 (S.D.Fla.1977),

*aff'd*, 576 F.2d 650 (5th Cir.1978), *cert. denied*, 440 U.S. 929, 99 S.Ct. 1265, 59 L.Ed.2d 485 (1979).

**8.** Since fraudulent intent is immaterial under former SDCL § 54–8–10, the provision of former SDCL § 54–8–4 directing that the question of fraudulent intent is one of fact and not of law is not involved in this action.

or claims on that property, including any liens or claims of these remaining defendants.

Therefore,

Upon the record herein,

IT IS ORDERED:

(1) That the Motion for Summary Judgment, Doc. 56, filed by defendant and second counterclaim and cross-claim plaintiff Lila M. Forsberg and Lila M. Forsberg, Executrix of the Estate of Norst G. Forsberg, deceased, is granted.

(2) That the Motion for Summary Judgment, Doc. 62, filed by defendant and first counterclaim and cross-claim plaintiff United States of America, is granted subject to the rights of Lila M. Forsberg and Lila M. Forsberg, Executrix of the Estate of Norst G. Forsberg, deceased, in the property herein described as the Forsberg land.

(3) That the Motions to Compel Discovery, Doc. 62, to Strike Demand for Jury Trial, Doc. 60, and to Strike Plaintiffs' Motion for Summary Judgment, Doc. 75, filed by defendant and first counterclaim and cross-claim plaintiff United States of America, are denied as moot.

(4) That the Motion for Order for Separate Trials, Doc. 68, filed by defendant and second counterclaim and cross-claim plaintiff Lila M. Forsberg and Lila M. Forsberg, Executrix of the Estate of Norst G. Forsberg, deceased, is denied as moot.

(5) That the Motion for Summary Judgment, Doc. 73, filed by plaintiffs and counterclaim defendants William and Lisa Karras is denied.

(6) That the mortgage held by Lila M. Forsberg and Lila M. Forsberg, Executrix of the Estate of Norst G. Forsberg, deceased, on the property described herein as the Forsberg land shall be foreclosed, the property shall be sold, and the proceeds from that sale shall be applied to the payment of the sum due on the debt secured by the mortgage and interest thereon. If any proceeds remain after the satisfaction of this claim they shall be applied to the payment of the federal tax lien on that property.

(7) That the federal tax liens on the property described herein as 4300 South Marion Road shall be foreclosed, the property shall be sold, and the proceeds shall be applied to the payment of the federal tax lien on that property.

(8) That the Clerk shall enter judgment in favor of Lila M. Forsberg and Lila M. Forsberg, Executrix of the Estate of Norst G. Forsberg, deceased, and the United States of America in accordance with this Memorandum Opinion and Order.

(9) This Order constitutes a final order as to all claims raised by the parties to this proceeding.