**In re OXFORD ROYAL MUSHROOM PRODUCTS, Inc., Debtor.**

**Bankruptcy No. 81–02434G.**

United States Bankruptcy Court, E.D. Pennsylvania.

Sept. 13, 1984.

Robert H. Levin, Adelman, Lavine, Krasny, Gold & Levin, Philadelphia, Pa., trustee/movant.

Nathan Lavine, Adelman, Lavine, Krasny, Gold & Levin, Philadelphia, Pa., for trustee/movant, Robert H. Levin.

John W. Frazier, IV, John E. Caruso, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for Main Hurdman Company, accountants.

William T. Windsor, Jr., Michael C. Olmstead, Saul, Ewing, Remick & Saul, Philadelphia, Pa., for debtor, Oxford Royal Mushroom Products, Inc.

Lawrence J. Lichtenstein, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Allen B. Dubroff, Pincus, Verlin, Hahn, Reich & Goldstein, Philadelphia, Pa., for Creditors' Committee.

## OPINION

EMIL F. GOLDHABER, Chief Judge:

The question in the dispute before us is whether we should grant the trustee's motion to enforce a subpoena duces tecum against the debtor's accountant,—whereby the trustee seeks to determine the extent of the debtor's estate,—notwithstanding an accountant-client privilege provided by state law. For the reasons expressed herein we conclude that the privilege is no bar to the accountant's disclosure of the information sought, and we will accordingly enter an order enforcing the subpoena.

The facts of this case are as follows:[1] The debtor filed a petition for reorganization under chapter 11 of the Bankruptcy Code ("the Code") and a trustee was subsequently appointed. The trustee's investigation of the debtor's affairs revealed that it issued 77 checks to one "P. Turner" in amounts totaling $554,603.00. Based on the limited information he has been able to

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

gather, the trustee suspects that P. Turner is a fictitious individual concocted by the debtor's president for the purpose of bilking funds from the corporation. In determining the size of the debtor's estate and in investigating the ostensibly illicit transfers made to "P. Turner" the trustee secured the depositions of several principals of the debtor and sought its financial records by obtaining a subpoena duces tecum against the debtor's accountant, Main Hurdman Company ("Hurdman"). Hurdman objected to the production of the documents and the trustee has since moved for enforcement of the subpoena.

■■■ Hurdman and the debtor oppose the motion on the basis of the accountant-client privilege afforded by Pennsylvania state law. Pa.Stat.Ann. tit. 63, § 9.11a (Purdon Supp.1984).[2] The applicability of this provision in the federal courts is governed by Fed.R.Evid. 501 which states as follows:

RULE 501.  GENERAL RULE

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Under this rule in cases presenting federal questions the federal common law of privilege applies, but where state law provides the rule of decision, state law will govern. *Wm. T. Thompson Co. v. General Nutrition Corp.*, 671 F.2d 100, 103 (3d Cir.1982). Under federal common law there is no confidential accountant-client privilege. *Couch v. United States*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), In fact, "the general rule in federal practice disfavor[s] privileges not constitutionally based." *Thompson*, 671 F.2d at 104.

■■ As we expressed above, in the case at bench the trustee subpoened Hurdman in order to establish the size of the debtor's bankruptcy estate and determine possible means of augmenting it. Such concerns are central to the system of bankruptcy administration and as such lie singularly within the realm of federal law rather than state law.[3] Thus, state law does not provide the rule of decision, and Pennsylvania's accountant-client privilege does not

---

**2.** § 9.11a  Privileged communication

Except by permission of the client or person or entity engaging him or the heirs, successors or personal representatives of such client or person or entity, a certified public accountant, public accountant, partnership or corporation, holding a permit to practice under this act, or a person employed by a certified public accountant, public accountant, partnership, or a director of or a person employed by a professional corporation holding a permit to practice under this act, or an associate of or a person employed by a professional association holding a permit to practice under this act shall not be required to, and shall not voluntarily, disclose or divulge information of which he may have become possessed relative to and in connection with any professional services as a certified public accountant, public accountant, partnership or corporation. The information derived from or as the result of such professional services shall be deemed confidential and privileged. Provided, however, That nothing herein shall be taken or construed as prohibiting the disclosure of information required to be disclosed by the standards of the profession in reporting on the examination of financial statements, or in making disclosures in a court of law or in disciplinary investigations or proceedings when the professional services of the certified public accountant, public accountant, partnership or corporation are at issue in an action, investigation or proceeding in which the certified public accountant, public accountant, partnership or corporation are parties.

Pa.Stat.Ann. tit. 63, § 9.11a (Purdon Supp.1984).

**3.** Supporting our holding is a fairly recent case from the United States Court of Appeals for the Eleventh Circuit which held that Georgia's accountant-client privilege did not apply in bankruptcy proceedings. The court stated in part, as follows:

We recognize that Georgia's legislature has decided that the accountant-client relationship needs the protection of an evidentiary privi-

apply. Having reached this result, it is unnecessary for us to determine if the trustee has the authority to waive a debtor corporation's accountant-client privilege. *Cf., Commodity Futures Trading Commission v. Weintraub,* 722 F.2d 338 (7th Cir.1984) (trustee may not waive attorney-client privilege).

We will enter an order against Hurdman enforcing the subpoena.

lege and that federal refusal to acknowledge this privilege might tend to undermine Georgia's policy of encouraging accountant-client candor. However, recognition of the accountant-client privilege in bankruptcy proceedings would substantially thwart an important *federal* interest. A creditors committee is empowered by federal law to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business." 11 U.S.C. § 1103(c)(2). Application of an accountant-client privilege in federal bankruptcy proceedings would deny courts and creditors access to a vital source of information relating to a debtor's assets and liabilities. Thus, recognition of an accountant-client privilege in federal bankruptcy proceedings would completely undermine the important federal interest in providing bankruptcy courts and creditors with complete and accurate information regarding a debtor's financial condition.

It is true that Georgia may find it difficult to foster candor and confidential communications among its accountants and clients if other courts refuse to follow the State's rules of evidentiary privilege. However, Georgia would face this problem even if we were to extend the accountant-client privilege to federal bankruptcy proceedings, for Georgia's rules of evidentiary privilege might not be followed in the courts of neighboring states and will not be followed in federal criminal proceedings. See Fed.R.Evid. 501.

Thus, refusal to adopt Georgia's accountant-client privilege in federal bankruptcy proceedings would not, *in and of* itself undermine the State's policy of encouraging accountant-client candor. However, recognition of the privilege would significantly undermine the important federal interest in assuring complete and accurate disclosure in federal bankruptcy proceedings.
*International Horizons, Inc. v. Committee of Unsecured Creditors,* 689 F.2d 996, 1004–05 (11 Cir.1982) (emphasis in original, footnote omitted).