In re TIDEWATER GROUP, INC., Debtor.

PROVIDERS FIDELITY LIFE INSUR-ANCE COMPANY, Plaintiff and Third-Party Plaintiff,

v.

TIDEWATER GROUP, INC., Debtor-in-Possession and Defendant.

AMERICAN CENTENNIAL LIFE INSURANCE COMPANY, Third-Party Defendant,

v.

FIDUCIARY & GENERAL CORPORA-TION, Counterclaim Defendant.

Bankruptcy No. 79–02972A. Adv. No. 79–0028A.

United States Bankruptcy Court, N.D. Georgia.

Sept. 18, 1986.

Ezra H. Cohen, Herbert D. Shellhouse, Judy E. Weisman, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for Providers Fidelity Life Ins. Co.

John L. Taylor, Jr., John G. Grubb, Jr., Chorey & Taylor, Atlanta, Ga., for American Centennial Life Ins. Co.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

This case is before the Court on a motion by Providers Fidelity Life Insurance Company ("Providers") to compel discovery of American Centennial Life Insurance Company ("American Centennial").

The proceeding arose from a contract, entered into with this Court's approval, under which the debtor, Tidewater Group, Inc., agreed to sell Providers all the stock of American Centennial, a subsidiary of the debtor. Providers refused to go through with the transaction and initiated this adversary proceeding against the debtor to recover the earnest money. When the debtor counterclaimed for breach of contract, Providers impleaded American Centennial by filing a third-party complaint alleging that American Centennial caused any alleged breach by misrepresenting its financial condition. American Centennial filed a counterclaim against Providers alleging various breach of contract and tort causes of action. In a court-approved settlement, all claims except this counterclaim were dismissed.

At issue here is Request 15 of Providers' First Request for Production, which sought the following documents:

All documents which reflect, relate to, or evidence any financial audit reports including but not limited to those prepared by or for the receiver of [American Centennial], including but not limited to those reports for the years ending March 31, 1980, March 31, 1981 and March 31, 1982.

Providers Fidelity Life Insurance Company's First Request for Production of Documents to American Centennial Life Insurance Company at p. 7. American Centennial's response objected to the request on the grounds of relevance, the accountant-client privilege, and the attorney work-product doctrine. American Centennial also asserted that the requested reports had been placed under seal by order of the Circuit Court for Baltimore City, Maryland ("Receivership Court") in which American Centennial's receivership proceedings were pending.

The audit reports referred to in Providers' request and American Centennial's objection were prepared by accountants employed by the receiver after obtaining the permission of the Receivership Court. The objections of American Centennial go only to these audit reports, as it has expressed its willingness to grant Providers access to the records from which the reports were prepared.

The Receivership Court ordered the reports to be sealed based on the arguments of the receiver that the reports were confidential and that their disclosure would prejudice the case in this Court. The Maryland Life and Health Insurance Guaranty Association ("MLHIGA") later sought access to the reports and appealed its case to the Court of Appeals of Maryland. *Maryland Life and Health Insurance Guaranty Association v. Perrott,* 301 Md. 78, 482 A.2d 9 (1984). The Maryland Court of Appeals remanded to the Receivership Court on the issue of whether the audit reports should be unsealed. The Receivership Court ultimately granted MLHIGA access to the reports under a protective order restricting the access to, use, and disclosure of those reports by MLHIGA. Providers argues that disclosure of the reports to MLHIGA constitutes a waiver of any privilege that American Centennial might otherwise have asserted.

One of American Centennial's grounds for objection to Providers' discovery request is relevance. Providers' defense to American Centennial's claim is that Ameri-

can Centennial materially misrepresented its financial condition. In the Court's view, the audit reports showing this financial condition at the time in question are clearly relevant to this issue. Therefore, American Centennial's claims of privilege must be addressed.

█ This Court has previously held, and it is now settled in this Circuit, that there is no accountant-client privilege under federal law. *In re International Horizons, Inc.*, 14 B.R. 199 (Bankr.N.D.Ga.1981), *aff'd*, 16 B.R. 484 (N.D.Ga.1981), *aff'd*, 689 F.2d 996 (11th Cir.1982). Here, however, American Centennial argues that Rule 501 of the Federal Rules of Evidence requires that the privilege issue be determined in accordance with state law because state law supplies the rules of decision in this case. Georgia law recognizes an accountant-client privilege by statute. O.C.G.A. § 43–3–32. If the audit reports are privileged under this provision, they are outside the scope of permissible discovery here. Fed. R.Civ.P. 26(b)(1); Bankr.R. 7026.

Rule 501 of the Federal Rules of Evidence provides:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, which respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed.R.Evid. 501.

In *International Horizons*, the litigation involved the efforts of the debtor's unsecured creditors' committee to gain access to the audits of the debtors. This Court noted that "since bankruptcy law is federal law, state privilege law need not be looked to." *International Horizons*, 14 B.R. at 201–02. The United States Court of Appeals for the Eleventh Circuit agreed:

> [T]he sole questions before the bankruptcy tribunal relate to traditional questions of *federal* bankruptcy law: Should the debtor be adjudicated bankrupt? What is the current financial condition of the debtor? What are its assets? Where are its assets? Is current management fit to remain in possession and control of the assets?

*Matter of International Horizons, Inc.*, 689 F.2d 996, 1003 (11th Cir.1982). In short, *International Horizons* involved a bankruptcy "case" in its technical meaning.

Here, on the other hand, the Court is faced with an adversary proceeding dealing with non-bankruptcy issues. While an adversary proceeding can clearly involve questions of bankruptcy law alone, such as preferences or dischargeability, the instant proceeding appears to concern solely state law. The questions involved are whether Providers breached a contract or committed a tort to the damage of American Centennial and whether Providers has a good defense to these claims because American Centennial materially misrepresented its financial condition. Thus, the situation is clearly distinguishable from *International Horizons*, where the sole questions, as stated above, related to federal bankruptcy law.

Providers argues that, if American Centennial's claim is "related to" the original bankruptcy case, then federal law must control, and no accountant-client privilege could be asserted. Providers' Brief in Support of Motion to Compel Discovery at p. 3, n. 1. This argument confuses the question of the existence of federal subject matter jurisdiction in order for a claim to be heard in federal court with the question of what law the federal court will apply. These questions are separate and distinct. In the Order of August 13, 1986, this Court found that federal subject matter jurisdiction existed over American Centennial's counterclaim on two alternative grounds: (1) that

the counterclaim was ancillary to claims arising in or related to a Title 11 case; or (2) that the counterclaim itself is related to a Title 11 case. In either situation, state law could still provide the rule of decision for the claim without stripping the Court of subject matter jurisdiction. If ancillary jurisdiction attached, no independent federal jurisdictional basis is required. *See, e.g., Moore v. New York Cotton Exchange,* 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926). If the counterclaim is itself "related to" a Title 11 case, this merely means that it can be heard in federal court, but, as in a diversity case, the federal court may apply state law.

It is true that a federal rule regarding a procedural aspect of a case applies in federal courts, even in cases where state law controls the substantive questions. *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Therefore, federal law in the form of the Federal Rules of Evidence applies here. However, Rule 501 of those Rules refers the court to state law for a determination as to privileges whenever state law supplies the rule of decision as to a claim or defense. Any other interpretation would require a federal court to always apply the federal law on privileges, which would render the second sentence of Rule 501 meaningless.

The claims and defenses involved in this proceeding are grounded in breach of contract, fraud, and misrepresentation, which are all clearly areas where state law must supply the rule of decision. This Court will therefore decide the case as would a state court in this district, and will consequently apply Georgia's choice-of-law rules. Since both parties' briefs addressed only Georgia law when state law was argued, the parties are apparently in agreement that if state law is to apply to this case, it will be Georgia law. This appears consistent with the rule in Georgia that a contract entered into in Georgia and to be performed in

Georgia will be governed by Georgia law.[1] *See Eldon Industries, Inc. v. Paradies & Co.,* 397 F.Supp. 535 (N.D.Ga.1975); *General Electric Credit Corp. v. Home Indemnity Co.,* 168 Ga.App. 344, 309 S.E.2d 152 (1983). The audit reports sought by Providers are therefore protected by O.C. G.A. ` § 43–3–32 unless the statutory accountant-client privilege has been waived by American Centennial.

■ Providers' first waiver argument is that American Centennial, by asserting a claim in which the subject matter of the privilege is a material issue, is deemed to have waived the privilege. However, American Centennial's claims are for breach of contract and a tortious conspiracy to defraud it. These claims do not raise the issue of American Centennial's financial condition. That issue is raised and is relevant only to Providers' defense. The cases cited by Providers are inapposite to the situation here. Those state cases involve the statutory waiver pursuant to O.C.G.A. § 24–9–40 of the doctor-patient privilege by a patient who places his care and treatment in issue in a civil proceeding. *See, e.g., Jones v. Thornton,* 172 Ga.App. 412, 323 S.E.2d 217 (1984); *Orr v. Sievert,* 162 Ga.App. 677, 292 S.E.2d 548 (1982).

■ Providers also argues that American Centennial's disclosure of the audit reports to MLHIGA constitutes a waiver. The Court agrees with American Centennial that disclosure must be voluntary in order to constitute a waiver. *See Champion International Corp. v. International Paper Co.,* 486 F.Supp. 1328, 1331–32 (N.D. Ga.1980); *Gilbert v. State,* 169 Ga.App. 383, 313 S.E.2d 107 (1984) (no waiver if a proper objection to disclosure was made at trial). Here, it is clear that American Centennial's disclosure of the audit reports was compelled, not voluntary. MLHIGA had to take its case to the Maryland Court of Appeals, and it still did not gain access

---

1. The Court notes, however, that, even if a Georgia court were to hold that the Georgia accountant-client privilege would not apply in this case because it was meant to protect the confidences of clients domiciled or incorporated in Georgia,

the choice to apply the law of Maryland, where American Centennial is incorporated, would also result in a statutory accountant-client privilege being recognized. *See* Md.Cts. & Jud.Proc. Code Ann. § 9–110 (1974).

to the reports until the case was remanded to the Receivership Court. Also, American Centennial did all it could in seeking to see that its privilege was not waived by obtaining a protective order that only MLHIGA could have access to the reports and could not disclose the information therein to other parties. Therefore, American Centennial has not waived its state law accountant-client privilege in this case. This holding makes it unnecessary to address the parties' arguments on the attorney work-product doctrine.

Accordingly, it is ORDERED that Providers' motion to compel discovery be DENIED.