**Ellis CARY and Sherry Cary**

**v.**

**Floyd SOILEAU, Sheriff of Evangeline Parish.**

**Civ. A. No. 87–0761**

United States District Court, W.D. Louisiana, Lafayette–Opelousas Division.

Jan. 6, 1989.

J. Wendel Fusilier, Ville Platte, La., for plaintiff.

Patrick B. McIntire, Oats & Hudson, Lafayette, La., for Floyd Soileau.

Charles J. Foret, Jeansonne & Briney, Lafayette, La., for Hartford Acc. & Indem. Co.

Patrick C. Morrow, Morrow, Morrow, Ryan & Bassett, Opelousas, La., for Anthony Briley and Briley's Lounge, Inc.

Blake Deshotels, Fontenot & Deshotels, Mamou, La., for Rick Briley.

## RULING RE PLAINTIFFS' MOTION TO COMPEL BRENDA HAIRFORD TO TESTIFY RE INTERSPOUSAL COMMUNICATIONS

PAMELA A. TYNES, United States Magistrate.

### I. FACTS

Counsel for the plaintiff filed a Motion to Compel additional deposition testimony from Brenda Hairford, wife of Ronald Hairford who is a party defendant in this action. Brenda Hairford's deposition commenced on September 8, 1988 and substantial testimony was given. However, each time that questions were posed concerning communications between Brenda Hairford and her husband, an objection was asserted by counsel for Ronald Hairford on grounds that the marital privilege precluded any testimony by Mrs. Hairford concerning communications between she and her husband. Ultimately, Brenda Hairford asserted the marital privilege on her own behalf.

### II. APPLICABLE LAW

The complaint in the instant action alleges both a federal civil rights claim and pendent state tort law claims. Thus, the initial question which must be resolved is whether federal or state law concerning privileges will govern resolution of this motion. Clearly, the testimony sought from Brenda Hairford is potentially relevant to both the federal and state claims asserted herein. In such situations, appellate courts

have consistently held that the asserted privilege is governed by principles of federal, not state, law. *vonBulow By Auersperg v. vonBulow*, 811 F.2d 136, 141 (2nd Cir.1987); *Thompson Co. v. General Nutrition Corp.*, 671 F.2d 100, 104 (3rd Cir. 1982); *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1061 n. 3 (7th Cir.1981). Several trial courts have also held that federal law is controlling in cases involving both federal and state claims. *First Federal Savings & Loan v. Oppenheim, Appel, Dixon*, 110 F.R.D. 557, 560 (S.D.N.Y.1986); *Sirmans v. City of South Miami*, 86 F.R.D. 492, 494–95 (S.D. Fla.1980); *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 458–59 (N.D.Cal. 1978). In addition, the Senate Report accompanying Rule 501 of the Federal Rules of Evidence states that "[i]t is also intended that the Federal law of privileges should be applied with respect to pendent state law claims when they arise in a Federal question case." S.Rep. No. 93–1277, reprinted in, [1974] U.S.Code Cong. & Admin. News 7051, 7059 n. 16. Accordingly, this Court will apply the applicable federal law concerning the existence and application of the marital privilege.

The principles by which a federal court determines whether a privilege applies are set forth in Rule 501 of the Federal Rules of Evidence which provides:

"Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, *the privilege of a witness*, person, government, State, or political subdivision thereof *shall be governed by the principles of the common law as they may be interpreted by the Courts of the United States in the light of reason and experience.* However, in civil actions and proceedings, with respect to an element of a claim or defense as to which States law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law." (emphasis added)

Rule 501 dictates that this Court shall interpret the marital privilege in accordance with prior decisions of the United States Courts in the light of reason and experience.

## III. DISCUSSION OF MARITAL PRIVILEGE

■ Recent jurisprudence has repeatedly reaffirmed the continued existence of the marital privilege in federal common law. See *Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980); *In re Grand Jury Proceedings*, 664 F.2d 423 (5th Cir.1981); *United States v. Entrekin*, 624 F.2d 597 (5th Cir.1980); *United States v. Mendoza*, 574 F.2d 1373 (5th Cir.1978), cert. denied, 439 U.S. 988, 99 S.Ct. 584, 58 L.Ed.2d 661 (1978); *United States v. Cameron*, 556 F.2d 752 (5th Cir.1977). Yet, in *Trammel* the United States Supreme Court modified the privilege "so that the witness spouse alone has a privilege to refuse to testify adversely" and "may be neither compelled to nor foreclosed from testifying." 445 U.S. 40, 53, 100 S.Ct. 906, 914, 63 L.Ed.2d 186, 196 (1980). Thus, Brenda Hairford's personal assertion of the marital privilege was of definitive significance as the attorney representing her husband, Ronald Hairford, had no legal basis upon which to assert the marital privilege, either independently or on behalf of Mr. Hairford.

The marital privilege is actually divided into two distinct privileges by the federal courts. The first privilege bars a spouse from testifying adversely to the other. The second privilege bars a spouse from testifying as to interspousal communications of the other. *United States v. Entrekin*, 624 F.2d at 598; *United States v. Mendoza*, 574 F.2d at 1379; *United States v. Cameron*, 556 F.2d at 755. We are primarily concerned here with the second type of marital privilege because the questions which Mrs. Hairford refused to answer were directed toward discovery of the substance of any comments which may have been made by Ronald Hairford to Brenda Hairford concerning the events at issue in this lawsuit.

Despite the fact that the marital privilege has been subject to sharp criticism for its basis in outdated notions and because it is in derogation of the public's "right to every man's evidence," *Trammel v. United States*, 445 U.S. at 43–50, 100 S.Ct. at 909–12, 63 L.Ed.2d at 190–94; *In re Grand Jury Proceedings*, 664 F.2d at 431; *United States v. Bryan*, 339 U.S. 323, 70 S.Ct. 724, 94 L.Ed. 884 (1950) the common law still recognizes the right of a spouse to refuse to testify re interspousal communications, and thus, this Court must analyze the applicability of the marital privilege herein in the light of reason and experience as mandated by Fed.R.Evid. 501.

## IV. NEED FOR DISCLOSURE VERSUS NEED TO PROTECT MARITAL RELATIONSHIP

■ Utilizing the standards created by Congress and the courts, this Court will weigh the public's need for disclosure on one hand against the need to protect the marital relationship on the other. Initially, the Court considers the need to protect the relationship. A review of Brenda Hairford's deposition indicates that she and Ronald Hairford are presently married and living together despite two prior separations. Mr. and Mrs. Hairford have one child, a son who is thirteen years old. Mrs. Hairford's attitude toward her husband throughout the deposition was a protective one, and she ultimately invoked the marital privilege on her own behalf stating that she wanted to assert it because "I don't like to talk about it, it's hard for me to talk about."

It is apparent that the Hairford's marriage has not always been a harmonious one, but Brenda Hairford's testimony indicates that the marriage is intact at this time. The purpose of the privilege protecting confidential communications between spouses is to foster harmony in the marital relationship. *Trammel v. United States*, 445 U.S. at 51–53, 100 S.Ct. at 906, 912–14, 63 L.Ed.2d at 195–96. The record convinces this Court that ordering Mrs. Hairford to give further testimony concerning confidential communications between she and her husband may well precipitate conflict in an already troubled marriage.

Next, the Court turns to the public's need for additional disclosure in this case. Review of Brenda Hairford's deposition transcript reveals repeated denials that her husband ever told her anything about the events which transpired on the pertinent evening during which the plaintiff suffered the injuries herein sued upon. Thus, even if Brenda Hairford were ordered to testify concerning confidential communications between she and her husband, Ronald Hairford, it appears based upon her existing deposition testimony that she would probably say that her husband told her nothing about the incident at issue in this lawsuit.

## V. CONCLUSION

■ Having weighed the need for additional testimony from Brenda Hairford concerning the events at issue in this lawsuit against the importance of the policy sought to be furthered by the marital privilege, the Court concludes that the principles furthered by the marital privilege in this case outweigh the need and, indeed, the potential value of any further testimony from Brenda Hairford. For this reason, the plaintiff's Motion to Compel additional deposition testimony of Brenda Hairford is DENIED.