**In re Steven Lloyd CARMEAN, Debtor.**

**David M. WHITTAKER, Plaintiff,**

**v.**

**Robert E. CARMEAN, et al., Defendants.**

Bankruptcy No. 2–90–02440.
Adv. No. 2–91–0254.

United States Bankruptcy Court,
S.D. Ohio, E.D.

March 17, 1993.

---

Ruth Ann Hohl, Columbus, OH, for plaintiff.

Steven Craig, Hilliard, OH, for debtor.

Richard F. Swope, Reynoldsburg, OH, for defendants Robert and JoAnn Carmean.

## OPINION AND ORDER ON CERTAIN LEGAL AND EVIDENTIARY ISSUES

BARBARA J. SELLERS, Bankruptcy Judge.

### I. INTRODUCTION AND BACKGROUND

The Trustee brought this complaint against the Debtor and JoAnn and Robert Carmean, the Debtor's parents. The Trustee seeks to recover two allegedly fraudulent conveyances from the Debtor to his parents in November, 1988. This action was tried to the Court on November 30, 1992.

The Court has jurisdiction of this matter pursuant to 28 U.S.C. Section 1334(b) and the general order of reference entered in this District. This is a core proceeding under 28 U.S.C. 157(b)(2)(H).

The Debtor allegedly made two fraudulent transfers to his parents in November of 1988. The Trustee seeks to apply to those transfers the Ohio Uniform Fraudulent Transfer Act, enacted on September 28, 1990.

During trial, the Trustee called Vicki Litchfield, the Debtor's ex-spouse, to testify as to certain acts and communications made by the Debtor during their marriage. The Debtor and the Debtor's parents objected to this testimony on the grounds of spousal privilege. The Court stated at trial that it would issue a written opinion deciding whether the recently enacted Ohio Uniform Fraudulent Transfer Act applies in this adversary action and whether the testimony of the Debtor's former wife, Vicki Litchfield, is admissible.

### II. ISSUES OF LAW

The issues being decided by the Court at this time are:

1. Should the Court apply Ohio's Uniform Fraudulent Transfer Act to

transfers allegedly made prior to the adoption of that statute?

2. Is the Debtor's ex-spouse competent to testify in these proceedings as a witness?

3. Is the testimony of the Debtor's ex-spouse admissible in this action by the Trustee to recover allegedly fraudulent conveyances?

### III. *DISCUSSION*

#### A. *The Ohio Uniform Fraudulent Transfer Act*

■■■ In deciding whether to apply the Ohio Uniform Fraudulent Transfer Act, the Court is controlled by Ohio law on retroactive application of statutes. Retroactive application of a statute in Ohio is governed by Section 1.48 of the Ohio Revised Code, which states that: "A statute is presumed to be prospective in its operation unless expressly made retrospective." *Van Fossen v. Babcock & Wilcox,* 36 Ohio St.3d 100, 105, 522 N.E.2d 489, 495 (1988) (quoting Ohio Revised Code Section 1.48). The Ohio Uniform Fraudulent Transfer Act does not contain a provision which would expressly give the statute retrospective application. See generally Ohio Rev.Code Chapter 1336 (Page's 1991). Thus, under Ohio Revised Code Section 1.48, the Ohio Uniform Fraudulent Transfer Act should not be applied to transfers which predated its enactment.

Although the Supreme Court of Ohio has not decided whether the Ohio Uniform Fraudulent Transfer Act should be applied retroactively, a bankruptcy judge has applied *Van Fossen* and has held that the act should not be applied retroactively to transfers made before its passage on September 28, 1990. *Scott v. Fifth Third Bank (In re Carrousel Motels),* 146 B.R. 733 (Bankr. S.D.Ohio 1992). The court noted that:

[with] the exception of a conclusory holding by the court in *In re Gherman,* 103 B.R. 326, 331 (Bankr.S.D.Fla.1989), contrary to holdings of two other bankruptcy judges in the same state, *see In re Smith,* 110 B.R. 597, 598–99 (Bankr. M.D.Fla.1990), and *In re Warner,* 83

B.R. 807, 809–10 (Bankr.M.D.Fla.1988), the courts of every jurisdiction which has considered the question have concluded that the replacement of the UFCA by the UFTA is to be accorded prospective effect only, i.e., the UFTA is applied only to alleged fraudulent transfers occurring after the effective date of the UFTA in that jurisdiction. *Fifth Third Bank,* 146 B.R. at 735 (quoting *In re Fleet,* 122 B.R. 910, 915 (Bankr.E.D.Pa.1990)).

Any transfer made before the passage of Ohio's Uniform Fraudulent Transfer Act is, therefore, governed by the Uniform Fraudulent Conveyance Act, the predecessor law in Ohio. *Fifth Third Bank,* 146 B.R. at 733. Since the alleged fraudulent transfer between the Debtor and his parents took place in November of 1988, prior to the September 20, 1990 enactment in Ohio of the Uniform Fraudulent Transfer Act, this Court will not apply the Ohio Uniform Transfer Act to this alleged fraudulent transfer.

#### B. *Competency of Ex–Spouse as a Witness*

■■■ The Debtor's ex-spouse is competent to testify in this action under the Federal Rules of Evidence. *See* Fed.R.Evid. 601. Rule 601 provides that in federal court "[e]very person is competent to be a witness except as provided in these rules". Fed.R.Evid. 601. However, Rule 601 further requires that "the competency of a witness shall be determined in accordance with State law" where "State law supplies the rule of decision". Thus, in determining the competency of a witness, the Court must ordinarily decide whether "State law supplies the rule of decision". Fed.R.Evid. 601.

■■■ The Debtor's former wife would be competent to testify under either Federal Rule of Evidence 601 in a federal question case or under the applicable state rule, Rule 601 of the Ohio Rules of Evidence, if the Court decides that "State law supplies the rule of decision". *See* Federal Rule 601 (ex-spouse not incompetent to testify) and *compare* Ohio Evid.R. 601 (ex-spouse not incompetent to testify). Thus, this Court need not decide whether "State law sup-

plies the rule of decision" in this action for purposes of determining the competency of the Debtor's former wife. She is competent to testify.

## C. *Spousal Privilege*

The statutes which apply to the issue of spousal privilege are a follows:

> Federal Rules of Evidence, Rule 501. General Rule
>
> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law. Fed.R.Evid. 501.
>
> Ohio Revised Code Section 2317.02. Privileged communications and acts.
>
> The following persons shall not testify in certain respects:
>
> ... (D) Husband or wife, concerning any communication made by one to the other, or an act done by either in the presence of the other, during coverture, unless the communication was made, or act done in the known presence or hearing of a third person competent to be a witness; and such rule is the same if the marital relation has ceased to exist. Ohio Rev.Code Ann. Section 2317.02 (Anderson 1991).

Although the Debtor's former wife is competent to testify in this proceeding, upon objection by the Debtor, certain communications made to her by the Debtor are not admissible because they represent communications privileged under Ohio Revised Code Section 2317.02.

■ In determining whether communications between the Debtor and his former spouse during their prior marriage are admissible, the Court first must decide whether federal common law of privilege applies or whether Ohio law of privilege applies because this action is a "civil action ... with respect to an element of a claim or defense as to which State law supplies the rule of decision". Fed.R.Evid. 501.

This proceeding, authorized by 11 U.S.C § 544, can be analogized to the trial of an ancillary or pendent state law claim where the evidence presented is relevant only to that state law claim. The bankruptcy case is the federal question action and the adversary proceeding is authorized by § 544 of the Bankruptcy Code.

A number of federal courts have applied the federal common law of privilege under Section 501 of the Federal Rules of Evidence where a federal claim and a pendent state law claim were tried together and the evidence for which the privilege was claimed was relevant to both the federal and state claim.[1] However, where the fed-

---

1. *See von Bulow by Aursperg v. von Bulow*, 811 F.2d 136 (2nd Cir.1987) (applying the federal common law of privilege under Section 501 of the Federal Rules of Evidence where a federal claim based on the Racketeering Influenced and Corrupt Organizations Act was tried with a pendant state law claim); *Wm. T. Thompson Co. v. General Nutrition Corp.*, 671 F.2d 100 (3d Cir. 1982) (applying the federal common law of privilege under Section 501 of the Federal Rules of Evidence where a federal anti-trust claim was tried with a pendant state law claim); *Meridian Mortgage Corporation v. Spivak*, 1992 WL 205640 (E.D.Pa.) (applying the federal common law of privilege under Section 501 of the Federal Rules of Evidence where a federal claim was tried with a pendant state law claim); *Longen-*

*bach v. McGonigle*, 750 F.Supp. 178 (E.D.Pa. 1990) (applying the federal common law of privilege under Section 501 of the Federal Rules of Evidence where a federal civil rights claim was tried with a pendant state claim); *Van Emrik v. Chemung County Dep't. of Social Services*, 121 F.R.D. 22 (W.D.N.Y.1988) (applying the federal common law of privilege under Section 501 of the Federal Rules of Evidence where a federal civil rights claim was tried with a pendant state law claim); *Lewis v. Capital Mortgage Investments*, 78 F.R.D. 295 (D.Md.1978) (applying the federal common law of privilege under Section 501 of the Federal Rules of Evidence where a federal securities claim was tried with a pendant state law claim).

eral court tries a pendant state law claim and the evidence for which a state law privilege is invoked is relevant only to the state claim, federal courts have applied the state law of privilege, as made applicable by Rule 501 of the Federal Rules of Evidence. Fed.Rule Evid. 501. A California bankruptcy court has held that the California law of privilege applied where a bankruptcy trustee sued a debtor's professional liability insurer for an alleged failure to pay benefits. *Taxel v. Equity General Insurance Co. (In re Couch)*, 80 B.R. 512 (Bankr.S.D.Cal.1987). The court cited Wright and Graham's analysis of Federal Rule 501 for the proposition that "if a privileged matter is evidence of [a] state claim, and 'is in a line of proof that culminates in an element of a state claim or defense, then state rules of privilege apply'". *Couch*, 80 B.R. at 515 (quoting *Federal Practice and Procedure*, Section 5434 (1980)).

It has also been held that Federal Rule 501 required the state law of privilege to be applied in a proceeding where state contract and tort claims were tried independently of the bankruptcy case. *In re Tidewater Group, Inc.*, 65 B.R. 179 (Bankr. N.D.Ga.1986). The *Tidewater* court stated that since the case involved "areas where

state law supplied the rule of decision," the court would "decide the case as would a state court in this district". *Tidewater Group*, 65 B.R. at 182. In this adversary action, the Court is deciding issues only under Ohio law on fraudulent conveyances; therefore, Ohio evidentiary rules relating to privilege apply.

There are several bankruptcy cases holding that the federal common law of privilege applies to a bankruptcy proceeding where state law does not "suppl[y] the rule of decision." These cases are inapposite, however, because they involve matters arising in the bankruptcy case itself rather than a cause of action brought in an adversary proceeding which does not depend for its resolution upon rights or powers arising only under the bankruptcy laws.[2] Thus, since the trustee has sued to recover property under the Ohio Uniform Fraudulent Transfer Act, Ohio law supplies the rule of decision and the Court will apply the Ohio rules of evidence with regard to privilege.

Further, this Court finds it important to note that even if the federal common law of privilege were applicable, admission of Vicki Litchfield's testimony would be substantially the same as it is under the state law rule.[3]

---

**2.** See *International Horizons, Inc. v. Committee of Unsecured Creditors*, 689 F.2d 996 (11th Cir. 1982) (applying the federal common law of privilege under Rule 501 of the Federal Rules of Evidence where a debtor sought to invoke a state statutorily created accountant-client privilege to deny a creditors' committee access to certain workpapers of the debtor's accountant); *In re Oxford Royal Mushroom Products, Inc.*, 41 B.R. 863 (Bankr.E.D.Pa.1984) (applying federal common law of privilege under Section 501 of the Federal Rules of Evidence where debtor sought to invoked accountant-client privilege); *Matter of Mori*, 1 B.R. 265 (Bankr.S.D.Fla.1979) (applying the federal common law of privilege under Rule 501 of the Federal Rules of Evidence where a debtor attempted to invoke a state statutorily created accountant-client privilege in denying creditors information related to debtor's assets, liabilities and income).

**3.** See *Fallowfield Development Corp. v. Strunk*, 1990 WL 52749 at 4, 5 (E.D.Pa.) (recognizing "privilege against revealing confidential spousal communications" under federal common law in civil action under federal environmental stat-

utes and noting that "the privilege may be raised at any time but only if it protects confidential communications made during the marital relationship" where there was (1) a communication and (2) the communication was confidential and intended to remain so); *Cary v. Soileau*, 125 F.R.D. 432, 434–35 (W.D.La.1989) (recognizing privilege against revealing confidential interspousal communications in federal civil rights action and identifying federal policy of "fostering harmony in the marital relationship"); Cf. *Ryan v. Commissioner*, 568 F.2d 531 (7th Cir. 1977) (recognizing that there is a federal common law privilege excluding certain confidential communications between spouses in an action by taxpayer for redetermination of deficiencies in income taxes but declining to recognize such privilege in this case where court felt that nonrecognition of privilege would not impede actual marital relationship); *Lien v. McIlvaine*, 1988 WL 87067, at 1 (N.D.Ill.) (recognizing federal common law privilege protecting marital communications in a Title VII action, though noting that privileges must be narrowly construed and that determination of privilege should be made on a case-by-case basis).

■ Section 2317.02 of the Ohio Revised Code, although phrased as a rule of competency, provides a party to litigation the privilege of excluding testimony by a spouse of confidential communications made during marriage. Ohio Rev.Code Ann. Section 2317, 02 (Anderson 1991). Ohio law presumes that testimony of a spouse about confidential marital communications should be excluded from evidence, absent the presence of third parties competent to testify. Ohio Rev.Code Ann. Section 2317.02 (Anderson 1991). However, the marital communications privilege does not apply where communications are made in the presence of third parties. Ohio Rev. Code Ann. Section 2317.02 (Anderson 1991).

■ The Ohio Supreme Court has stated that the reason for recognizing the confidentiality of interspousal communications is that "public policy requires that [spouses] shall not be allowed to betray the trust and confidence which are essential to the happiness of the married state". *Sessions v. Trevitt,* 39 Ohio St. 259, 267 (1883). One Ohio court has held that "statements of a routine or business nature, as well as abusive language and conduct of one spouse against another, are not privileged because they are unrelated to preservation of the married relationship and do not contain an indicia of confidentiality". *Harrison v. Harrison,* (Feb. 25, 1992), Franklin App. No. 91AP–888, unreported, 1992 WL 40556 at 2 (Ohio App.). Additionally, the privilege to exclude marital communications or acts in a spouse's presence survives divorce. *Liebold v. Liebold,* (July 24, 1986), Franklin App. Nos. 85AP–854, 85AP–863, unreported, 1986 WL 8189 (Ohio App.).

■ The following communications between Debtor and his former wife are inadmissible under the spousal privilege in Ohio created by Section 2317.02 because they represent communications from the Debtor to his ex-spouse Vicki Litchfield (the "Witness") while they were married. These communications did not take place in the presence of third parties who were competent to testify as witnesses.

1. Testimony by the Witness that Debtor asked her whether she had any money is inadmissible because this represents a communication between spouses where no third party was present, protected by Ohio Revised Code Section 2317.02. (See trial transcript at 75).

2. Testimony by the Witness that Debtor stated that "he couldn't pay all these charge card bills" represents a communication between spouses protected by Ohio Revised Code Section 2317.02. (See trial transcript at 76).

3. Testimony by the Witness as to Debtor's sources of income is inadmissible because this testimony discloses communications made in reliance on the marital bond covered by Ohio Revised Code Section 2317.02. (See trial transcript at 77.)

4. Testimony by the Witness about Debtor's explanations of the necklace that he allegedly bought for his mother and his explanation of what he did with the Rolex watch that he had allegedly had at a previous date is inadmissible because these communication were not in the known presence of a third party. (See trial transcript at 77).

5. Testimony by the Witness of how Debtor intended to file bankruptcy, the discussion with Attorney Craig regarding the bankruptcy and the testimony that Debtor couldn't pay his bills is inadmissible because this testimony discloses communications made between spouses protected under Ohio Revised Code Section 2317.02. Additionally, the testimony of the Witness that debtor wanted to file for a dissolution because of his financial condition is also inadmissible as a communication within the spousal privilege. The fact that the communication concerning bankruptcy was in the presence of Attorney Craig does not render such testimony admissible because under Ohio Revised Code Section 2317.02(A) Attorney Craig is not competent to testify concerning

these communications. Ohio Rev. Code Ann. Section 2317.02 (Anderson 1992). Thus, since the communication was not in the presence of a "known presence or hearing of a third person competent to be a witness," this communication is protected from disclosure by the spousal privilege. (See trial transcript at 77–78.)

6. Testimony by the Witness on how Debtor intended to pay for their dissolution is inadmissible because this purported statement was not made in the known presence or hearing of a third party. (See trial transcript at 78.)

7. Testimony by the Witness of her conversation with the Debtor in which they discussed where they were going to live and where they were going to obtain money to live on is inadmissible because these statements were not made in the known presence or hearing of a third party. (See trial transcript at 79).

8. Testimony by the Witness of Debtor's statements about what happened to the proceeds from the sale of the Blue Rock Property is inadmissible because this purported communication was not made in the known presence of a third party. (See trial transcript at 79).

9. Testimony by the Witness regarding Debtor's alleged "stories of being in prison, or burning a former wife's house down" are inadmissible because these statements were not made in the known presence or hearing of a third party. ORC 2317.02 (1992). (See trial transcript at 80).

10. Testimony by the Witness regarding Debtor's informing her that he had been in an accident where he "had head damage" and that "he even asked me for my doctor's name" is inadmissible because these statements were not made in the known presence or hearing of a

third party. Additionally, Debtor's statements that he was incapable of holding down a job because of severe headaches is also inadmissible because these interspousal communications were not made in the presence of a third Party. ORC 2317.02 (1992) (See trial transcript at 80).

Thus, Vicki Litchfield's testimony with regard to the above matters shall be stricken from the record.

 The following communications, however, were not confidential and are admissible:

1. The spousal communications privilege provided by the Ohio Revise Code Section 2317.02 does not cover acts or communications between Steven Carmean and Vicki Litchfield before marriage. Therefore, testimony about how the Debtor had the Witness quitclaim her interest in the house on Blue Rock Boulevard to Debtor is admissible since this occurred one day prior to their marriage. (See trial transcript at 69–71). The fact that this occurred prior to marriage was not rebutted by the Debtor.

2. Testimony by the Witness that the Debtor "never had any money" does not represent a communication between spouses or an act performed in the presence of the Witness. Thus, this testimony is admissible. Further, the statements by the Witness about the Debtor's use of a charge card are not privileged because the use of the charge card would necessarily be in the presence of a third person. (See trial transcript at 74).

3. Testimony by the Witness as to the Debtor's actions of drawing out money with a credit card and "gambl[ing] away" this money is admissible because these acts would necessarily be performed in the presence of third parties. Testimony by the Witness that Debtor paid for his honeymoon by credit card is also admissible because use of the

credit card was in the presence of a third party. These are not the type of confidential marital communications or acts that Ohio Revised Code Section 2317.02 aims to protect. (See trial transcript at 75.)

4. The fact that the Debtor allegedly had a car and a truck repossessed does not represent a communication between the spouses or an act by one in the other's presence and is, thus, admissible. (See trial transcript at 75–76.)

5. The debtor's purchase of an engagement ring and the subsequent return of the engagement ring to the store where it was purchased were made in the presence of a third party and are, thus, admissible into evidence. (See trial transcript at 76).

6. Discovery by the Witness of receipts for watches, rings and necklaces purchased by the Debtor does not represent a communication from one spouse to another or an act by one spouse in the other's presence. This testimony is, therefore, admissible. (See trial transcript at 76–77).

7. The testimony that Debtor saw a realtor for the purpose of selling his real estate is admissible, because this act was done in the presence of a third party. (See trial transcript at 78–79).

8. Testimony by the Witness about the fact that she did not know Debtor to have a box of money in the house or to have borrowed money from a credit union are admissible because this testimony does not involve communications to a spouse or acts in the spouse's presence. (See trial transcript at 79).

9. Testimony by the Witness that she believed that the Debtor did not have problems with his memory does not represent testimony about communications to her or acts in her presence within the marital relationship. (See trial transcript at 79–80). This testimony is, therefore, admissible.

10. Lastly, testimony by the Witness about statements that the Debtor made while on the phone to his mother or his real estate agent, or perhaps while talking to himself, is admissible. These alleged statements were obviously not communications "made . . . to" Witness by her spouse which are protected by privilege. Ohio Rev.Code Ann. Section 2317.02 (Anderson 1992). These alleged statements made behind a closed door which the Witness overheard because Debtor had "a voice that carried" were not directed "to" the Witness. Further, these statements made behind a closed door could not be characterized as an "act" in her "presence." These statements were allegedly made behind a closed door. To rule these statements inadmissible would strain the statutory language of Ohio Revised Code Section 2317.02. Additionally, construing these statements as inadmissible would do nothing to further the policy of maintaining the "trust and confidence which are essential to the happiness of the married state". *Sessions v. Trevitt*, 39 Ohio St. 259, 267 (1883). (See trial transcript at 81–83.)

Therefore, the Court shall allow the above testimony in this action because it is not subject to the spousal privilege.

## IV. CONCLUSION

In accordance with Ohio law, this Court will not apply retroactively Ohio's Uniform Fraudulent Transfer Act. This Court further finds that this Debtor's ex-spouse, Vicki Litchfield, is competent to testify in this proceeding. Lastly, the Court finds that the admissibility of the testimony of the Debtor's former spouse is governed by Ohio law as set forth in section III.B. of this order and opinion.

As discussed on the record at the trial of this proceeding, each counsel shall have two weeks from the service of this order to

file with the Court a written statement of any manner counsel believes the resolution of issues in this opinion affects legal arguments previously submitted to the Court. Once that submission has occurred, the Court will decide the merits of the adversary proceeding.

IT IS SO ORDERED.